IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DANIEL EARLE WALMSLEY,

        Petitioner,

    v.

JOHN MARSHALL,

        Respondent.

No. C 05-01693 CRB

**MEMORANDUM AND ORDER**

Now before the Court is the petition for writ of habeas corpus of Daniel Earle Walmsley ("Walmsley"). The petition arises out of the revocation of Walmsley's probation and his subsequent sentence of imprisonment relating to a sexual offense conviction. After careful review and consideration of the papers submitted, the petition for writ of habeas corpus is DENIED.

## I. BACKGROUND

**A.    Factual History**

Walmsley was convicted of felony lewd conduct with a child and misdemeanor annoying a child. People v. Walmsley, 2004 WL 1692432 *1 (July 29, 2004) (Cal.App.6 Dist.). The trial court sentenced Walmsley to a five-year term of conditional probation. Id. The conditions of Walmsley's probation included enrolling in a substance abuse counseling program, registering as a sex offender, paying a $300 restitution fine, enrolling in a

United States District Court

For the Northern District of California

1  psychological counseling program, and providing proof of employment or educational

2  training.  Id.

3  The trial court held a contested probation revocation hearing in April 2003.  The

4  evidence at the hearing established that in January 2003, Walmsley's probation officer,

5  Dinah Uwan ("Uwan"), discovered that Walmsley had been terminated from the Heaven's

6  Gate Program, the substance abuse counseling program in which he had initially enrolled.

7  Id.  He had been terminated for testing positive for drugs, failing to attend required meetings,

8  and being insubordinate to staff.  Id.  On or around February 6, 2003, Walmsley informed

9  Uwan that he had been terminated from the Heaven's Gate Program and that he had

10  reentered another program.  Walmsley provided Uwan with a registration address that was

11  later determined to be Bridge House, a Sober Living Environment.  Id.  Uwan testified that

12  Walmsley had downplayed his eviction from Heaven's Gate, stating that the program was

13  "too restrictive," and minimized his positive drug tests by "asserting that the judge was more

14  concerned about him being in a program than with him relapsing."  Id.

15  When Uwan visited Bridge House in early March 2003, she learned that Walmsley

16  had been terminated from the program three weeks earlier for multiple curfew violations and

17  for being missing for 24 hours.  Id.

18  Walmsley failed to provide proof of any enrollment in a psychological counseling

19  program, one of the conditions of his probation.  He also failed to provide proof of

20  employment or educational training, another requirement.  Walmsley admitted that he did not

21  have a job, and stated that he had applied to eighty or ninety jobs.  Id. at *2.  However,

22  Uwan stated that she did not believe Walmsley was actively looking for a job.  Id.  Walmsley

23  also admitted that he did not pay the $300 fine.  Id.

24  The trial court subsequently revoked Walmsley's probation and sentenced him to the

25  middle term of six years in prison.

26  **B.   Procedural History**

27  Walmsley filed a direct appeal from the trial court's sentence of imprisonment.  The

28  California Court of Appeal affirmed the judgment on July 29, 2004 in a written opinion, and

2

the California Supreme Court denied a petition for review on October 27, 2004.

In conjunction with the direct appeal, Walmsley filed a writ of habeas corpus in the Court of Appeal.  The Court of Appeal summarily denied the habeas petition on July 29, 2004, the same day it issued its opinion affirming the judgment on Walmsley's direct appeal. The California Supreme Court also summarily denied Walmsley's writ of habeas corpus.

## II.  STANDARD OF REVIEW

The Court may review a petition for writ of habeas corpus filed by a state prisoner challenging his state court conviction.  See 28 U.S.C. § 2254(a).  The petition will not be granted with respect to any claim adjudicated on the merits in state court proceedings unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  "Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) '*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States.'"  Williams v. Taylor, 529 U.S. 362, 404 (2000).  A state-court decision is contrary to the Supreme Court's clearly established precedent "if the state court applies a rule that contradicts the governing law set forth" in the Supreme Court's cases.  Id. at 405.  Under the "unreasonable application" inquiry, the court "should ask whether the state court's application of clearly established federal law was objectively unreasonable."  Id. at 409.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.

## III.  DISCUSSION

Walmsley raises six claims in his petition for writ of habeas corpus.  He makes three due process claims:  (1) the trial court failed to make adequate findings to justify the

revocation of probation; (2) the probation revocation proceedings were adjudicated by a biased judge; and (3) the judge relied on insufficient evidence in revoking Walmsley's probation.  Walmsley also alleges that he was denied effective assistance of counsel because of counsel's failure to: (4) subpoena the victim's post-trial psychiatric records; (5) object to a biased judge at the probation revocation proceeding; and (6) object to the imposition of the middle term of six years upon reliance on an improper factor at sentencing.

**A.     Due Process**

"Probation revocation . . . is not a stage of criminal prosecution, but does result in a loss of liberty."  <u>Gagnon v. Scarpelli</u>, 411 U.S. 778, 782 (1973).  Accordingly, a probationer, like Walmsley, cannot be denied due process.  <u>See id.</u>

**1.   Failure to Make Adequate Findings**

Walmsley first alleges that he was denied due process because the trial judge did not provide a written statement regarding the evidence relied upon and the reasons for revoking probation.  <u>See  Gagnon</u>, 411 U.S. at 786 (stating that the minimum requirements of due process include "a written statement by the factfinders as to the evidence relied on and the reasons for revoking (probation) or parole") (internal quotation marks and citation omitted).

A reporter's transcript of the probation revocation proceeding satisfies the requirement for a written statement if it contains statements of evidence and reasoning to permit an adequate basis for appellate review.  <u>See People v. Moss</u>, 213 Cal.App.3d 532, 535 (1989).  In a probation revocation proceeding, "the making of written findings of fact is not an indispensable concomitant of due process if there is a substantially equivalent substitute therefor, such as appears from the official reporter's transcript of the oral proceedings in the case at bench."  <u>People v. Scott</u>, 34 Cal.App.3d 702, 708 (1989).  If the transcript of the probation revocation proceedings "contains a statement of evidence and reasons that permits full appellate review as to the propriety of revocation, it cannot be said that the absence of a formal written statement has deprived the defendant of due process."  <u>Moss</u>, 213 Cal.App.3d at 534.

The state appellate court rejected Walmsley's due process argument: "the reporter's

1    transcript contains substantial, if not overwhelming evidence to support the court's finding."

2    Walmsley, 2004 WL 1692432 at *4. The court noted the evidence that during Walmsley's

3    probation he "failed to comply with conditions concerning substance abuse treatment,

4    psychological counseling, employment, restitution, and sex offender registration." Id. The

5    court concluded further that the transcript reflected that the trial court "implicitly rejected

6    defendant's efforts to justify his admitted failure to comply with probation conditions." Id.

7        The state court's decision was not contrary to or an unreasonable application of

8    clearly established Supreme Court law.  The official reporter's transcript includes substantial

9    evidence of numerous probation violations, and the record is an adequate written statement

10   for the purpose of due process.  Moreover, at the end of the hearing the trial court adequately

11   explained its rejection of Walmsley's defense:  "It is clear to me that you have never [taken]

12   responsibility for what you did that got you convicted in the first place or for the things you

13   were supposed to do when you are on probation.  You hear what you want to hear, you

14   interpret it to mean what you want it to mean, and you have absolutely no intention of doing

15   what you must do if you want to deal with your problems in a successful manner.

16   Subsequently, I have no option except to allow the probation to remain revoked."  Answer,

17   Exh. L3, Reporter's Transcript at 302.  Walmsley has not established a due process violation,

18   let alone have demonstrated that the state court's decision was objectively unreasonable.

19       **2. Judicial Bias**

20       Walmsley next contends that his due process rights were violated because he was

21   deprived of his right to be sentenced by an impartial judge.  A basic requirement of due

22   process includes the right to a fair trial and an unbiased judge.  See Haupt v. Dillard, 17 F.3d

23   285, 287 (9th Cir. 1994);  People v. Brown, 6 Cal.4th 322, 332 (1993).  A violation of the

24   right to an impartial judge "is a fatal defect in the trial mechanism."  Brown, 6 Cal.4th at 333.

25    To prove judicial bias, however, Walmsley must "overcome a presumption of honesty and

26   integrity" in favor of the judge.  Withrow v. Larkin, 421 U.S. 35, 47 (1975).

27       Walmsley alleges that his probation "was revoked by a biased judge who had

28   predetermined and articulated Walmsley's minimum prison sentence at an earlier unrelated

United States District Court

For the Northern District of California

5

1  proceeding." Pet. at 35:8.  At the original sentencing hearing on March 27, 2002, the judge

2  stated:

3            I don't know whether probation is going to work for you . . . and I am
          going to keep a very, very close reign on you.  And if you fail on
4            probation you will not be looking at a mitigated sentence, and the
          possibilities here are three, six, and eight years.  So if you fail on
5            probation, it is wide open for what will happen to you, and I intend to
          keep jurisdiction of this case and not have it go to any other court; it will
6            stay with me . . . This is the only chance that he will get from me.  If you
          come back for a violation of probation, for a dirty test, or for failure to
7            attend counseling . . . you will go to state prison.

8  Walmsley, 2004 WL 1692432 at *5.  The judge retained the case and presided over

9  Walmsley's probation revocation proceeding.  Walmsley points to the above statement to

10  show the judge's bias and argues: "the judge's adverse state of mind was regarding a *future*

11  action and was not based upon actual observance of the witnesses or the evidence given

12  during the trial of that action." Pet. at 37:13.

13       The state appellate court rejected Walmsely's bias argument.  Although the victim, her

14  mother, and the prosecutor strongly opposed the original probation sentence, the trial court

15  nonetheless imposed probation because of Walmsley's minimal criminal history, age, and

16  potential for rehabilitation. The appellate court reasoned: "The court's statements of its

17  willingness to take the risk of putting defendant on probation, backed up by it [sic] promise

18  to send the defendant to prison is part of the salutary functions of probation and a role many

19  judges have played."  Walmsley, 2004 WL 1692432 at *6.  In this context, the state appellate

20  court found the trial court's warning to be a "proper and appropriate, if not routine,

21  admonitory tool to impress upon defendant that the grant of probation was a valuable

22  opportunity to rehabilitate himself outside of prison."  Id.  The court concluded that "the trial

23  judge's comments at sentencing, as a whole, would [not] have caused a reasonable person to

24  doubt whether her [sic] could be impartial at a subsequent resentencing hearing."  Id.

25       Walmsley has not established that the state court unreasonably applied the law or

26  deviated from Supreme Court precedent regarding judicial bias.  Walmsley has failed to

27  prove that the judge "disregarded her role as a neutral decision-maker and failed to keep an

28  open mind until she had had an opportunity to hear all the evidence." Pet. at 36:3.  In fact,

6

United States District Court

For the Northern District of California

1    the trial court revoked Walmsley's probation and sentenced him to incarceration only after

2    hearing an extensive presentation of evidence during the revocation hearing.  A trial court's

3    familiarity with the facts of a case or her prior rulings on the case do not disqualify the court

4    for bias.  See People v. Yeager, 55 Cal.2d 374, 391 (1961).

5        **3.  Insufficiency of Evidence**

6        Walmsley also urges that there is insufficient evidence that he willfully failed to pay

7    restitution and obtain employment.

8        The standard of proof for probation revocation proceedings is less stringent than the

9    standard to convict in a criminal offense.  See In re Coughlin, 16 Cal.3d 52, 56 (1976).  The

10   court may revoke probation "if the interests of justice so require and the court, in its

11   judgment, has reason to believe from the report of the probation officer or otherwise that the

12   person has violated any of the conditions of his probation."  Cal. Penal Code § 1203.2(a).

13   However, "probation shall not be revoked for failure . . . to make restitution . . . unless the

14   court determines that the defendant has willfully failed to pay and has the ability to pay."  Id.

15       The record contains undisputed evidence that Walmsley did not pay the restitution

16   fine or obtain employment.  The state court found that: "although he admitted buying his own

17   alcohol, he failed to pay his restitution fine, thinking too it did not matter because probation

18   could not be revoked solely for nonpayment.  And, notwithstanding his assertion that he filed

19   over 80 job applications and went to several job interviews, his probation officer did not

20   believe he was responsibly or actively seeking job training or employment."  Walmsley, 2004

21   WL 1692432 at *4 and n.2.  The court further noted that Walmsley had not offered any proof

22   of his job applications, and therefore the court was not required to believe his testimony.  Id.

23   Moreover, the state court's conclusion that he had willfully failed to pay the fine in light of

24   his admitted purchase of alcohol was not unreasonable.

25       The state court's ruling on the sufficiency of evidence was not unreasonable.

26   **B.  Ineffective Assistance of Counsel**

27       Walmsley next contends that his Sixth and Fourteenth Amendment right to effective

28   assistance of counsel was violated.  According to Walmsley, his trial counsel was ineffective

7

United States District Court

For the Northern District of California

1    during the trial and during the probation revocation hearing due to: (1) counsel's failure to

2    subpoena medical records of the victim regarding her attempted suicide, which occurred after

3    the trial; (2) counsel's failure to object to a biased judge and to object to the insufficiency of

4    evidence at the revocation hearing; and (3) counsel's failure to object to the court's reliance

5    on an improper factor when imposing the middle term of six years.

6         To prevail on a claim of ineffective assistance of counsel a defendant must pass the

7    two-part test articulated in Strickland v. Washington, 466 U.S. 668 (1984).  Defendant must

8    demonstrate (1) that "counsel's representation fell below an objective standard of

9    reasonableness," and (2) that "counsel's deficient performance prejudiced the defense." Id.

10   at 687-88.  Concerning the first prong, there is a "strong presumption that counsel's conduct

11   falls within the wide range of reasonable professional assistance." Id. at 689.  Hence,

12   "judicial scrutiny of counsel's performance must be highly deferential." Id.  To fulfill the

13   second prong, a defendant must show that "there is a reasonable probability that, but for

14   counsel's errors, the result of the proceeding would have been different." Id.  at 669.

15   Furthermore, "unless a defendant makes both showings, it cannot be said that the conviction

16   . . . resulted from a breakdown in the adversary process that renders the result unreliable." Id.

17   at 687.

18        **1.    Failure to Subpoena Records**

19        Walmsley first argues that his trial counsel was constitutionally ineffective post-trial

20   because he failed to subpoena the victim's medical records, thereby depriving him of his

21   constitutional right to confront and cross-examine the witness against him.  The

22   Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a

23   criminal prosecution "to be confronted with the witnesses against him;" this right includes

24   the right of cross-examination.  See Davis v. Alaska, 415 U.S. 308, 315 (1974).

25        For claims of ineffective assistance "[a] particular decision not to investigate must be

26   directly assessed for reasonableness in all the circumstances, applying a heavy measure of

27   deference to counsel's judgments." Strickland, 466 U.S. at 691.  Walmsley has not shown

28   that counsel's failure to subpoena the victim's medical records was constitutionally

8

United States District Court

For the Northern District of California

1  unreasonable.  Information that the victim saw a psychiatrist was disclosed for the first time

2  at the sentencing hearing, after the trial had ended.  The victim was hospitalized after her

3  testimony in the jury trial had concluded.   As such, there were no records for counsel to

4  subpoena during the trial.  Walmsley has also not established that counsel's failure to

5  subpoena the records *after Walmsley was sentenced to probation* was constitutionally

6  unreasonable.  He does not cite a single case, let alone a Supreme Court case, that suggests

7  counsel was required to so act.  His reliance on Baylor v. Estelle, 94 F.3d 1321 (9th Cir.

8  1996), is misplaced.  In that case trial counsel failed to follow up on exculpatory evidence of

9  which he was aware prior to trial.  Here, in contrast, counsel was not aware of the subject

10  evidence before trial, as it did not exist, and Walmsley has not shown that the evidence is

11  likely exculpatory.

12        As Walmsley has failed to establish the first prong of the Strickland test, this claim

13  must fail.  It also fails because any error was harmless.  Walmsley fails to show that the

14  medical records include any evidence, or are even likely to include any evidence, that would

15  have entitled Walmsley to a new trial.

16        **2.      Failure to Object to a Biased Judge and Insufficiency of Evidence**

17        Walmsley next asserts that his counsel's representation fell below the standard of

18  reasonable conduct when counsel failed to object to adjudication by a biased judge at the

19  probation revocation hearing and failed to object to the sufficiency of evidence.  As the Court

20  has previously concluded that the evidence was sufficient and the judge was not biased, these

21  claims fail as a matter of law.

22        **3.      Failure to Object to an Improper Sentencing Factor**

23        Finally, Walmsley claims that his counsel's failure to object to the trial court's

24  reliance on an improper sentencing factor violated his Sixth and Fourteenth Amendment

25  rights.  He contends that "as the court clearly failed to base the length of Petitioner's sentence

26  solely on circumstances existing at the time Petitioner's probation was granted and not upon

27  subsequent events, the court abused its discretion in revoking Petitioner's probation and

28  sentencing him to the middle term of six years."  Pet. at 47:25.  As support for his argument

**United States District Court**

For the Northern District of California

1   he cites California Rules of Court, Rule 4.435(b)(1), which provides that upon revocation of

2   probation, "[t]he length of the sentence shall be based on circumstances existing at the time

3   probation was granted, and subsequent events may not be considered in selecting the base

4   term nor in deciding whether to strike or specifically not order the additional punishment for

5   enhancements charged and found."

6          The appellate court was not persuaded by Walmsley's argument.  While the record did

7   not reveal counsel's reason for not objecting to the trial court's reasoning, the appellate court

8   found that counsel's omission was not unreasonable." Walmsley, 2004 WL 1692432 at *7.

9   It concluded that in revoking Walmsley's probation and imposing prison the trial court noted

10  four aggravating factors related to the offense of conviction and found only two mitigating

11  circumstances, namely, Walmsley's age and lack of a serious criminal history.  Id.  "Given

12  the court's view of the crime at the initial sentencing and its later determination that

13  aggravating circumstances outnumbered mitigated circumstances, counsel could have

14  concluded that there was no reasonable possibility of a mitigated term and that defendant

15  could have been given an aggravated term."  Id.  In other words, that there was no point in

16  raising an objection.  The state appellate court opined further that

17          counsel also could have understood the court's comments to mean that it had
18          looked at defendant's post-probation conduct, albeit improperly, to see if there
            was anything that might still justify a mitigated sentence.  In other words, the
            court's alleged error could have only benefited [sic] defendant.  In short,
19          therefore, counsel reasonably could have declined to object, finding it pointless
            and perhaps, counter-productive, to do so.

20

21  Id.  The appellate court also found that any error in failing to object was harmless as a matter

22  of law: "we do not find a reasonable probability, or even possibility, that the court would

23  have imposed a mitigated term if counsel had pointed out the court's apparent violation of

24  the rule governing sentencing upon revocation of probation.  Id. at *8.

25          Walmsley has not shown how any of the state court's conclusions involved an

26  unreasonable application of Supreme Court law or misapplied such law.  Accordingly, this

27  claim, too, fails..

28  //

10

**United States District Court**

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV.  CONCLUSION

For the foregoing reasons, Walmsley's petition for writ of habeas corpus is DENIED.

**IT IS SO ORDERED.**

Dated: December 9, 2005



_____
CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE